# COMPROMISE SETTLEMENT AGREEMENT AND RELEASE

This **Compromise Settlement Agreement and Release** ("Agreement") is made and entered into by and between the Democratic Party of Georgia, Inc. ("DPG"), the DSCC, and the DCCC (collectively, the "Political Party Committees"), on one side, and Brad Raffensperger, Rebecca N. Sullivan, David J. Worley, Seth Harp, and Anh Le (collectively, "State Defendants"), on the other side. The parties to this Agreement may be referred to individually as a "Party" or collectively as the "Parties." The Agreement will take effect when each and every Party has signed it, as of the date of the last signature (the "Effective Date").

**WHEREAS**, in the lawsuit styled as *Democratic Party of Georgia, et al. v. Raffensperger, et al.*, Civil Action File No. 1:19-cv-5028-WMR (the "Lawsuit"), the Political Party Committees have asserted claims in their Amended Complaint [Doc. 30] that the State Defendants' (i) absentee ballot signature matching procedure, (ii) notification process when an absentee ballot is rejected for any reason, and (iii) procedure for curing a rejected absentee ballot, violate the First and Fourteenth Amendments to the United States Constitution by unduly burdening the right to vote, subjecting similarly situated voters to disparate treatment, and failing to afford Georgia voters due process (the "Claims"), which the State Defendants deny;

**WHEREAS**, the State Defendants, in their capacity as members of the State Election Board, adopted on February 28, 2020 Rule 183-1-14-.13, which sets forth specific and standard notification procedures that all counties must follow after rejection of a timely mail-in absentee ballot;

**WHEREAS**, the State Defendants have a Motion to Dismiss [Doc. 45] pending before the Court, which sets forth various grounds for dismissal of the Amended Complaint, including mootness in light of the State Election Board's promulgation subsequent to adoption on February 28, 2020 of Rule 183-1-14-.13, which Motion the Political Party Committees deny is meritorious;

**WHEREAS**, all Parties desire to compromise and settle all disputed issues and claims arising from the Lawsuit, finally and fully, without admission of liability, having agreed on the procedures and guidance set forth below with respect to the signature matching and absentee ballot rejection notification and cure procedures; and

**WHEREAS**, by entering into this Agreement, the Political Party Committees do not concede that the challenged laws and procedures are constitutional, and

similarly, the State Defendants do not concede that the challenged laws and procedures are unconstitutional.

**NOW THEREFORE**, for and in consideration of the promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties do hereby agree as follows:

1. **Dismissal.** Within five (5) business days of March 22, 2020, the effective date of the Prompt Notification of Absentee Ballot Rejection rule specified in paragraph 2(a), the Political Party Committees shall dismiss the Lawsuit with prejudice as to the State Defendants.

2. **Prompt Notification of Absentee Ballot Rejection.**

(a) The State Defendants, in their capacity as members of the State Election Board, agree to promulgate and enforce, in accordance with the Georgia Administrative Procedures Act and State Election Board policy, the following State Election Board Rule 183-1-14-.13 of the Georgia Rules and Regulations:

> When a timely submitted absentee ballot is rejected, the board of registrars or absentee ballot clerk shall send the elector notice of such rejection and opportunity to cure, as provided by O.C.G.A. § 21-2-386, by mailing written notice, and attempt to notify the elector by telephone and email if a telephone number or email is on the elector's voter registration record, no later than the close of business on the third business day after receiving the absentee ballot. However, for any timely submitted absentee ballot that is rejected on or after the second Friday prior to Election Day, the board of registrars or absentee ballot clerk shall send the elector notice of such rejection and opportunity to cure, as provided by O.C.G.A. § 21-2-386, by mailing written notice, and attempt to notify the elector by telephone and email if a telephone number or email is on the elector's voter registration record, no later than close of business on the next business day.
>
> Ga. R. & Reg. § 183-1-14-.13 Prompt Notification of Absentee Ballot Rejection

(b) Unless otherwise required by law, State Defendants agree that any amendments to Rule 183-1-14-.13 will be made in good faith in the spirit of ensuring that voters are notified of rejection of their absentee ballots with ample time to cure

their ballots.  The Political Party Committees agree that the State Election Board's proposed amendment to Rule 183-1-14-.13 to use contact information on absentee ballot applications to notify the voter fits within that spirit.

3. **<u>Signature Match</u>**.

(a)   Secretary of State Raffensperger, in his official capacity as Secretary of State, agrees to issue an Official Election Bulletin containing the following procedure applicable to the review of signatures on absentee ballot envelopes by county elections officials and to incorporate the procedure below in training materials regarding the review of absentee ballot signatures for county registrars:

> County registrars and absentee ballot clerks are required, upon receipt of each mail-in absentee ballot, to compare the signature or mark of the elector on the mail-in absentee ballot envelope with the signatures or marks in eNet and on the application for the mail-in absentee ballot.  If the signature does not appear to be valid, registrars and clerks are required to follow the procedure set forth in O.C.G.A. § 21-2-386(a)(1)(C).  When reviewing an elector's signature on the mail-in absentee ballot envelope, the registrar or clerk must compare the signature on the mail-in absentee ballot envelope to each signature contained in such elector's voter registration record in eNet and the elector's signature on the application for the mail-in absentee ballot.  If the registrar or absentee ballot clerk determines that the voter's signature on the mail-in absentee ballot envelope does not match any of the voter's signatures on file in eNet or on the absentee ballot application, the registrar or absentee ballot clerk must seek review from two other registrars, deputy registrars, or absentee ballot clerks. A mail-in absentee ballot shall not be rejected unless a majority of the registrars, deputy registrars, or absentee ballot clerks reviewing the signature agree that the signature does not match any of the voter's signatures on file in eNet or on the absentee ballot application. If a determination is made that the elector's signature on the mail-in absentee ballot envelope does not match any of the voter's signatures on file in eNet or on the absentee ballot application, the registrar or absentee ballot clerk shall write the names of the three elections officials who conducted the signature review across the face of the absentee ballot envelope, which shall be in addition to writing "Rejected" and the reason for the rejection as required under OCGA 21-2-386(a)(1)(C). Then, the registrar or absentee ballot clerk shall

commence the notification procedure set forth in O.C.G.A. § 21-2-386(a)(1)(C) and State Election Board Rule 183-1-14-.13.

(b) The Parties agree that the guidance in paragraph 3(a) shall be issued in advance of all statewide elections in 2020, including the March 24, 2020 Presidential Primary Elections and the November 3, 2020 General Election.

4. **Consideration of Additional Guidance for Signature Matching.** The State Defendants agree to consider in good faith providing county registrars and absentee ballot clerks with additional guidance and training materials to follow when comparing voters' signatures that will be drafted by the Political Party Committees' handwriting and signature review expert.

5. **Attorneys' Fees and Expenses.** The Parties to this Agreement shall bear their own attorney's fees and costs incurred in bringing or defending this action, and no party shall be considered to be a prevailing party for the purpose of any law, statute, or regulation providing for the award or recovery of attorney's fees and/or costs.

6. **Release by The Political Party Committees.** The Political Party Committees, on behalf of themselves and their successors, affiliates, and representatives, release and forever discharge the State Defendants, and each of their successors and representatives, from the prompt notification of absentee ballot rejection and signature match claims and causes of action, whether legal or equitable, in the Lawsuit.

7. **No Admission of Liability.** It is understood and agreed by the Parties that this Agreement is a compromise and is being executed to settle a dispute. Nothing contained herein may be construed as an admission of liability on the part of any of the Parties.

8. **Authority to Bind; No Prior Assignment of Released Claims.** The Parties represent and warrant that they have full authority to enter into this Agreement and bind themselves to its terms.

9. **No Presumptions.** The Parties acknowledge that they have had input into the drafting of this Agreement or, alternatively, have had an opportunity to have input into the drafting of this Agreement. The Parties agree that this Agreement is and shall be deemed jointly drafted and written by all Parties to it, and it shall be interpreted fairly, reasonably, and not more strongly against one Party than the other.

Accordingly, if a dispute arises about the meaning, construction, or interpretation of this Agreement, no presumption will apply to construe the language of this Agreement for or against any Party.

**10. Knowing and Voluntary Agreement.** Each Party to this Agreement acknowledges that it is entering into this Agreement voluntarily and of its own free will and accord, and seeks to be bound hereunder. The Parties further acknowledge that they have retained their own legal counsel in this matter or have had the opportunity to retain legal counsel to review this Agreement.

**11. Choice of Law, Jurisdiction and Venue.** This Agreement will be construed in accordance with the laws of the State of Georgia. In the event of any dispute arising out of or in any way related to this Agreement, the Parties consent to the sole and exclusive jurisdiction of the state courts located in Fulton County, Georgia. The Parties waive any objection to jurisdiction and venue of those courts.

**12. Entire Agreement; Modification.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. The Parties acknowledge that they have not relied on any representations, promises, or agreements of any kind made to them in connection with their decision to accept this Agreement, except for those set forth in this Agreement.

**13. Counterparts.** This Agreement may be executed in counterparts which, taken together, will constitute one and the same Agreement and will be effective as of the date last set forth below, and signatures by facsimile and electronic mail will have the same effect as the originals.

**IN WITNESS WHEREOF**, the Parties have set their hands and seals to this instrument on the date set forth below.

Dated: March 6, 2020

*/s/ Bruce V. Spiva*

Marc E. Elias*
Bruce V. Spiva*
John Devaney*
Amanda R. Callais*
K'Shaani Smith*
Emily R. Brailey*
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
BSpiva@perkinscoie.com
ACallais@perkinscoie.com
KShaaniSmith@perkinscoie.com
EBrailey@perkinscoie.com

*Admitted Pro Hac Vice*

Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Joyce Gist Lewis
Georgia Bar No. 296261
Adam M. Sparks
Georgia Bar No. 341578
**KREVOLIN & HORST, LLC**
One Atlantic Center
1201 W. Peachtree St., NW, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
sparks@khlawfirm.com

*Counsel for Plaintiffs*

*/s/ Vincent R. Russo*

Christopher M. Carr 112505
Attorney General
Bryan K. Webb 743580
Deputy Attorney General
Russell D. Willard 760280
Senior Assistant Attorney General
Charlene S. McGowan 697316
Assistant Attorney General
**Office of the Georgia Attorney General**
40 Capitol Square S.W.
Atlanta, GA 30334
cmcgowan@law.ga.gov
Telephone: (404) 656-3389
Facsimile: (404) 651-9325

Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
**ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD LLC**
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3250

*Counsel for State Defendants*