IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| L. LIN WOOD, JR.;<br><br>Plaintiff,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Georgia Secretary of State; et al.,<br><br>Defendants. | Civil Action<br>Case No. 1:20-cv-04651-SDG |

**DECLARATION OF JOHN POWERS**

I, John Powers, declare under penalty and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.   Attached as Exhibit A is a true and correct copy of an order granting the motion to intervene of the NAACP – Pennsylvania State Conference in *Donald J. Trump For President, Inc. v. Boockvar*, No. 4:20-cv-2078, Doc. 72 (M.D. Pa. Nov. 12, 2020).

2.   Attached as Exhibit B is a true and correct copy of an order granting the motion to intervene of the Michigan State Conference NAACP in *Donald J.*

1

*Trump For President, Inc. v. Benson*, No. 1:20-cv-1083, Doc. 20 (W.D. Mich. Nov. 17, 2020).

    3.    Attached as Exhibit C is a true and correct copy of a declaration signed on November 14, 2020 by Helen Butler, Morgan County voter and Executive Director of the Georgia Coalition for the People's Agenda, and filed in *Brooks v. Mahoney*, No. 4:20-cv-281-RSB (S.D. Ga.).

    4.    I declare under penalty of perjury that the foregoing is true and correct.

    Executed this 18th day of November, 2020, in Kensington, Maryland.

_____
John Powers

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | No. 4:20-CV-02078 |
| Plaintiffs, | (Judge Brann) |
| v. | |
| KATHY BOOCKVAR, *et al.*, | |
| Defendants. | |

## ORDER

### NOVEMBER 12, 2020

**BACKGROUND:**

The Court now considers three motions to intervene brought by: (1) several organizations and individuals represented by the American Civil Liberties Union of Pennsylvania (the "ACLU Intervenors") (Doc. 30); (2) DNC Services Corporation/Democratic National Committee (the "DNC") (Doc. 39); and (3) Daniel A. Berger, a Pennsylvania attorney (Doc. 55). Given the expedited schedule under which this action must proceed, the Court finds it both proper, and necessary, to rule on the motions quickly, in order to allow all relevant parties the opportunity to be heard on the merits of the case.

The proposed intervenors argue that they are entitled to intervene under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 24. Under the Federal Rules, parties may seek to intervene as of right, or with the Court's permission. The

Court does not address whether the ACLU Intervenors and the DNC are entitled to intervention as a matter of right, because I readily find that they satisfy the requirements for permissive intervention under Fed. R. Civ. P. 24(b).

Permissive intervention requires that a party file a timely application for intervention, and that the party's claim or defenses share a common question of law or fact with the main action at bar.[1] As the United States Court of Appeals for the Third Circuit has noted, under Fed. R. Civ. P. 24, I must also consider whether allowing intervention would "unduly delay or prejudice the adjudication of the rights of the original parties."[2] A District Court's decision to allow permissive intervention is "highly discretionary."[3]

There is no question that the motions were timely. Plaintiffs filed the action on November 9, 2020. The ACLU Intervenors and the DNC filed their motions to intervene on November 10, 2020 and November 11, 2020. Accordingly, the first factor weighs in favor of allowing intervention.[4] The second factor does as well. The ACLU Intervenors have an interest "in the constitutionality of Pennsylvania's voting procedures," which "goes to the heart of Plaintiffs' action."[5] This will

---

[1] Fed. R. Civ. P. 24(b).
[2] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 n. 6 (3d Cir. 1994) (quoting Fed. R. Civ. P. 24(b)(3)).
[3] *U.S. v. Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014).
[4] *See, e.g.*, *National Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342 (M.D. Pa. 2013) (finding that a motion to intervene filed three weeks after a complaint was timely).
[5] *Donald J. Trump for President, Inc., et al. v. Kathy Boockvar, et al.*, No. 2:20-cv-00966, ECF 309 (W.D. Pa. 2020).

necessarily raise common questions of fact and law.  In another litigation brought by President Trump's campaign, the Honorable J. Nicholas Ranjan of the Western District of Pennsylvania granted intervention by a similar group of proposed intervenors as those represented by the ACLU.  This reasoning leads to the same conclusion in the instant action – namely, that intervention is allowable.  The same holds true for the motion brought by the DNC.

Finally, intervention will not "unduly delay or prejudice the adjudication of the original parties' rights," because the action was filed just days ago, and no further briefing has been received.[6]  Even under the expedited schedule set for this matter, the Court does not believe any of the original parties will be prejudiced.

Mr. Berger's motion presents a different set of questions.  First, it does not appear that Mr. Berger's interests are substantially different from the private individuals represented by the ACLU.  Both he and they stand to suffer the same harm; their interests are aligned.  Therefore, the Court does not believe that he may intervene as of right.[7]  Second, the Court exercises its discretion in denying Mr. Berger permissive intervention.  Were the Court to allow this individual to intervene on his own, the Court might be placed in the untenable position of having

---

[6] To the extent Plaintiffs may note that the proposed intervenors have not filed responsive pleadings yet, the Court notes that the absence of such pleadings at this stage is not dispositive, "because 'the failure to comply with the Rule 24(c) requirement for a pleading is a purely technical defect which does not result in the disregard of any substantial right.'" *PPL Energyplus, LLC v. Solomon*, 2011 WL 13128622, at *3 (D.N.J. July 19, 2011).

[7] *See* Fed. R. Civ. P. 24(a)(2) (noting that if existing parties "adequately represent [a proposed intervenor's] interest," that person may not intervene as of right).

- 3 -

to allow every individual to intervene on his or her own, which would then run the risk of "unduly delay[ing] or prejudice[ing] the adjudication of the rights of the original parties."[8]  The Court thanks Mr. Berger for his sense of civic duty, but denies his motion to intervene.

**THEREFORE**, **IT IS HEREBY ORDERED** that:

1. The ACLU Intervenors' motion to intervene (Doc. 30) is **GRANTED.**

2. The DNC's motion to intervene (Doc. 39) is **GRANTED**.

3. Daniel A. Berger's motion to intervene (Doc. 55) is **DENIED**.

4. The ACLU Intervenors and the DNC may file responsive pleadings, motions, and briefings on the same schedule as the Defendants. *See* Doc. 35.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[8] Fed. R. Civ. P. 24(b)(3).

# Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD J. TRUMP FOR PRESIDENT,
INC., et al.,

    Plaintiffs,                           Case No. 1:20-cv-1083

v.                                          HON. JANET T. NEFF

JOCELYN BENSON, et al.,

    Defendants.
_____/

## MEMORANDUM OPINION AND ORDER

Pending before the Court are three unopposed motions to intervene filed by the Michigan State Conference NAACP, Wendell Anthony, Yvonne White, and Andre Wilkes (ECF No. 6); the Democratic National Committee and the Michigan Democratic Party (ECF No. 10); and the City of Detroit (ECF No. 14). The proposed intervenors received concurrence in their motions from counsel anticipated to make appearances for Defendants, but the proposed intervenors did not receive concurrences from Plaintiffs (ECF Nos. 8, 11 & 16). Plaintiffs have since filed a joint response, indicating that they also do not oppose the motions (ECF No. 19). For the following reasons, the Court grants the unopposed motions to intervene.

**I**

Eight Plaintiffs initiated this action on November 11, 2020. Plaintiff "Donald J. Trump for President, Inc." is the campaign committee for the reelection of President Donald J. Trump and Vice President Michael R. Pence (Compl. ¶ 6). The remaining seven Plaintiffs—Matthew and Alexandra Seely, Philip O'Halloran, Eric Ostergren, Marian Sheridan, Mercedes Wirsing, and Cameron Tarsa—are Michigan citizens and registered voters (*id.* ¶ 7). With the exception of

Cameron Tarsa, the individual Plaintiffs voted in the November 3, 2020 presidential election and served as credentialed election challengers in that election (*id.*).

Plaintiffs filed this action in this Court against Jocelyn Benson, Michigan's Secretary of State; the Michigan Board of State Canvassers; Wayne County; and the Wayne County Board of County Canvassers. In their "Complaint for Declaratory, Emergency and Permanent Injunctive Relief," Plaintiffs allege the following three claims:

   I. Secretary of State Benson and Wayne County violated the Equal Protection Clause of the United States Constitution and the corollary clause of Michigan's Constitution

   II. Secretary of State Benson and Wayne County violated the rights of these Michigan voters under the federal Elections and Electors Clauses

   III. Secretary of State Benson and Wayne County violated Michigan's Election Code

Plaintiffs seek the following relief:

   A. An order directing Secretary Benson and the Michigan Board of State Canvassers to not certify the election results until they have verified and confirmed that all ballots that were tabulated and included in the final reported election results were cast in compliance with the provisions of the Michigan Election Code as set forth herein.

   B. An order prohibiting the Wayne County board of county canvassers and the board of state canvassers from certifying any vote tally that includes:

      (1) fraudulently or unlawfully cast ballots;

      (2) ballots tabulated using the Dominion tabulating equipment or software without the accuracy of individual tabulators having first been determined;

      (3) any ballots that were received after Election Day (November 3, 2020) where the postmark or date of receipt was altered to be an earlier date before Election Day; and

      (4) any ballots that were verified or counted when challengers were excluded from the room or denied a meaningful opportunity to observe the handling of the ballot and poll book as provided in MCL 168.733.

  C. An order directing the Wayne County board of county canvassers to summon and open the ballot boxes and other election material, as provided in MCL 168.823, and, in the presence of challengers who can meaningfully monitor the process, to review the poll lists, absent voter ballot envelopes bearing the statement required by MCL 168.761, and other material provided in MCL 168.811.

  D. An order directing that challengers be allowed to be physically present with a meaningful opportunity to observe when the accuracy of each piece of tabulating equipment is determined, and if the accuracy of each piece of tabulation equipment used by Wayne County is not confirmed to be accurate, an order directing a special election be held in the affected precincts as provided by MCL 168.831-168.839.

  E. An order directing the board of county canvassers and the board of state canvassers, with challengers present and meaningfully able to observe, to obtain and review the video of unattended remote ballot drop boxes.

(ECF No. 1 at PageID.30-31).

  Regarding the timing of their requested relief, Plaintiffs allege that consistent with MICH. COMP. LAWS § 168.822(1), the county board of canvassers shall conclude its canvass not later than November 17, 2020 (Compl. ¶ 71). Plaintiffs allege that consistent with MICH. COMP. LAWS § 168.842, the Michigan Board of State Canvassers will announce its determination of the canvass not later than December 3, 2020 (*id.* ¶ 72). Plaintiffs allege that the federal provisions governing the appointment of electors to the Electoral College, 3 U.S.C. § 1-18, "require Michigan Governor Whitmer to prepare a Certificate of Ascertainment by December 14, [2020,] the date the Electoral College meets" (*id.* ¶ 73). Last, Plaintiffs point out that the United States Code, 3 U.S.C. § 5, provides that if election results are contested in any state, and if the state, prior to election day, has enacted procedures to settle controversies or contests over electors and electoral votes, and if these procedures have been applied, and the results have been determined six days before the electors' meetings, then these results are considered to be conclusive and will apply in the counting of the electoral votes (*id.* ¶ 74). Plaintiffs represent that this date—the "Safe Harbor" deadline—falls on December 8, 2020 (*id.*). However, despite setting forth these looming deadlines and despite having

3

characterized their pleading as one requiring "emergency" relief, Plaintiffs have, to date, neither served their Complaint on Defendants nor filed any motions for immediate injunctive relief.

On Saturday, November 14, 2020, the Michigan State Conference NAACP (NAACP–MI), Wendell Anthony, Yvonne White, and Andre Wilkes filed their Motion to Intervene (ECF No. 6). That same day, the Democratic National Committee (DNC) and the Michigan Democratic Party (MDP) filed their Motion to Intervene (ECF No. 10), attaching, in pertinent part, a proposed Pre-Motion Conference Request (ECF No. 10-1) and a proposed Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) and (6) (ECF No. 10-3). On Monday, November 16, 2020, the City of Detroit filed a Motion to Intervene (ECF No. 14), indicating that it also intends to move to dismiss Plaintiffs' Complaint if intervention is granted (*id.* at PageID.656). As noted, Plaintiffs have not opposed the motions to intervene.

## II

Intervention is governed by Federal Rule of Civil Procedure 24. Rule 24(a) provides in pertinent part that on timely motion, the court "must permit" anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). Under Rule 24(b), the court "may" permit anyone to intervene who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact," provided "the court ... consider[s] whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b).

There is no question that the proposed intervenors' motions, filed within a matter of only a few days after Plaintiffs initiated this case, are timely. Further, as set forth in their motions and

4

which are unopposed by Plaintiffs, the proposed intervenors have substantial legal interests in the subject matter of this case. The Court determines that the distinct interests of these proposed intervenors may be impaired absent intervention and that these interests may not be adequately represented by the parties already before the Court.

Even assuming arguendo that granting intervention as of right under Rule 24(a) is not appropriate, the Court, in its discretion, grants the proposed intervenors' motions under Rule 24(b). Granting permissive intervention to these movants will certainly not delay or prejudice the adjudication of the original parties' rights, particularly where Plaintiffs have yet to serve the named Defendants. Additionally, as set forth more fully in their respective motions to intervene, the proposed intervenors seek to assert defenses that squarely address the factual and legal premise of Plaintiffs' claims. In sum, the motions to intervene are properly granted. Further, the Court will issue a briefing schedule on the motion to dismiss proposed by the Democratic National Committee and the Michigan Democratic Party, without the usual in-chambers conference, and will require service of Plaintiffs' Complaint on Defendants.

Therefore:

**IT IS HEREBY ORDERED** that the Motions to Intervene (ECF Nos. 6, 10 & 14) are GRANTED, and the movants may file responsive pleadings, motions and briefs on the same schedule as Defendants.

**IT IS FURTHER ORDERED** that Plaintiffs shall serve a copy of the Complaint and summons upon Defendants not later than 5:00 p.m. on Tuesday, November 17, 2020, and timely file proof of service of the same. <u>Failure to timely serve Plaintiffs may provide the Court justification to dismiss their "Complaint for Declaratory, Emergency and Permanent Injunctive Relief" for failure to diligently prosecute this case.</u>

**IT IS FURTHER ORDERED** that the Clerk of the Court shall ACCEPT the proposed Motion to Dismiss of the Democratic National Committee and the Michigan Democratic Party (ECF No. 10-3) ("the Motion to Dismiss") for docketing.

**IT IS FURTHER ORDERED** that any concurrences in the Motion to Dismiss shall be filed not later than 12:00 noon on Wednesday, November 18, 2020.

**IT IS FURTHER ORDERED** that Plaintiffs' response to the Motion to Dismiss shall be filed not later than 5:00 p.m. on Thursday, November 19, 2020.

**IT IS FURTHER ORDERED** that replies, if any, to Plaintiffs' Response shall be filed not later than 5:00 p.m. on Friday, November 20, 2020.

**IT IS FURTHER ORDERED** that the parties shall adhere to this Court's Local Civil Rule 10.9 when referencing a page of the record. *See* W.D. Mich. LCivR 10.9.

**IT IS FURTHER ORDERED** that Intervenors-Defendants Democratic National Committee and Michigan Democratic Party shall provide chambers with one three-ring binder containing single-sided paper courtesy copies of the respective dispositive motion papers, including their Motion to Dismiss, any concurrences, the response, any replies, and any exhibits, after electronic filing (i.e., with the CM-ECF PageID header), and properly tabbed. The binder shall be submitted to the Clerk's Office.

**IT IS FURTHER ORDERED** that the time for Defendants to file their answers/responsive pleadings to the Complaint is extended until fourteen days after the Court's decision on the Motion to Dismiss, or further Order of the Court.

Dated: November 17, 2020

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge

6

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| REBECCA BROOKS; et. al, <br><br> *Plaintiffs*, <br><br> v. <br><br> THOMAS MAHONEY, III, in his capacity as Chairman of the Chatham County Board of Elections; et. al, <br><br> *Defendants*. | No. 4:20-cv-00281-RSB |

**DECLARATION OF HELEN BUTLER**

Pursuant to 28 U.S.C. § 1746, I, Helen Butler, hereby declare as follows:

1. I have personal knowledge of the matters stated herein and would testify to the same if called as a witness in Court.

2. I am an African American female, a registered Georgia voter, over eighteen years of age and am otherwise competent to testify.

3. I am the Executive Director of the Georgia Coalition for the People's Agenda ("GCPA").

4. The GCPA is a Georgia not-for-profit corporation with its principal place of business located in Atlanta, Georgia. The GCPA is a coalition of more than 30 organizations, which collectively have more than 5,000 individual members.

5. The GCPA encourages voter registration and participation, particularly among Black and other underrepresented communities. The GCPA's support of voting rights is central to its mission. The organization has committed, and continues to commit, time and resources to

1

conducting voter registration drives, voter education, voter assistance, election protection, and other get-out-the-vote efforts in Georgia, such as "Souls to the Polls," "Pews to the Polls," and other initiatives designed to encourage voter registration and voter turnout.

6. In addition to our main office in Atlanta, the GCPA has field offices in Athens, Albany, Augusta, Macon, Savannah, and LaGrange, Georgia where we are able to provide outreach and support to voters and prospective voters of color and underserved communities outside of the Metro Atlanta area.

7. During the 2020 election cycle, the GCPA's voter outreach efforts were conducted in the greater Metro Atlanta region and as well as throughout other areas of Georgia from the aforementioned field offices and covered approximately 88 counties in the state, including in the counties where the Plaintiffs are seeking to disqualify lawful and legitimate votes, namely Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties.

8. GCPA's voter empowerment programs during the 2020 election cycle included, but were not limited to, educating prospective voters about how to register to vote and to confirm their registration status; educating voters about the options to vote in-person during advanced voting, in-person on Election Day and by mail via absentee ballot; and helping voters to understand the new voting system implemented for the first-time this cycle statewide.

9. During the 2020 election cycle, the GCPA also conducted candidate forums, distributed civic education materials to voters and prospective voters; arranged for rides to the polls for voters; and also supported the Georgia Election Protection field program in order to provide assistance to voters on the ground near polling sites.

2

10. GCPA also participated in media interviews, sponsored Public Service Announcements (PSAs), placed billboard ads, conducted phone banking, and engaged in text message campaigns to educate voters and to encourage participation in the 2020 election cycle.

11. I cast my absentee ballot for my 2020 presidential candidates of choice in Morgan County, Georgia where I am a resident. I confirmed my absentee ballot was received by the Morgan County Registrar's office on October 19, 2020. At the time I cast my ballot, I was, and still am, a qualified Morgan County voter and fully expected that my ballot would be counted equally among all of the other lawful ballots cast collectively across Georgia's 159 counties.

12. I, along with other eligible voters of color who cast lawful ballots in the 2020 presidential elections, are at grave risk of being disenfranchised by having our voting strength severely diluted if lawful votes in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties are invalidated and the results of the presidential election contest are reversed statewide.

13. The GCPA has an interest in preventing the disenfranchisement of eligible voters and the dilution of the voting strength of voters of color statewide who now run the risk of having the legitimate outcome of this election reversed by a court order in an unprecedented effort by the Plaintiffs to upend the Constitutional principle of one person, one vote by invalidating large numbers of legitimate and lawful votes simply because a voter happens to live in a certain county that the Plaintiffs have decided should not have an equal opportunity to participate in our democracy.

14. If Plaintiffs were to be successful in their lawsuit, this outcome would severely and negatively impact the GCPA's advocacy efforts now and in the future. It would inevitably lead some voters to believe that voting is pointless because their ballots will not be counted even

3

though they were eligible to vote and their ballots were entirely lawful. This sense of futility will likely depress turnout in the future and make it more difficult for the GCPA to carry out its mission of encouraging African-American individuals to register to vote, to vote, and to help protect others' right to vote.

15. Moreover, the disenfranchisement of voters who cast lawful ballots for their candidates of choice in the presidential election will force the GCPA to divert additional resources to voter education efforts, at the expense of other organizational priorities. If lawful votes cast in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties are discarded based upon the speculative assertions of the Plaintiffs in this litigation, I fear for the long-term impact on voter participation in Georgia and on the long-term effects of such an unprecedented attack on our democratic principles nationwide.

16. I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of November, 2020 in Alpharetta, Georgia.

_____
Helen Butler