IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| L. LIN WOOD, JR, <br><br> *Plaintiff,* <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia; et. al, <br><br> *Defendants*. | Civil Action <br> Case No. 1:20-CV-04651-SDG |

# DECLARATION OF HELEN BUTLER

Pursuant to 28 U.S.C. § 1746, I, Helen Butler, hereby declare as follows:

1. I have personal knowledge of the matters stated herein and would testify to the same if called as a witness in Court.

2. I am an African American female, a registered Georgia voter, over eighteen years of age and am otherwise competent to testify.

3. I am the Executive Director of the Georgia Coalition for the People's Agenda ("CGPA").

4. The GCPA is a Georgia not-for-profit corporation with its principal place of business located in Atlanta, Georgia. The GCPA is a coalition of more

1

than 30 organizations, which collectively have more than 5,000 individual members.

5. The GCPA encourages voter registration and participation, particularly among Black and other underrepresented communities. The GCPA's support of voting rights is central to its mission. The organization has committed, and continues to commit, time and resources to conducting voter registration drives, voter education, voter assistance, election protection, and other get-out-the-vote efforts in Georgia, such as "Souls to the Polls," "Pews to the Polls," and other initiatives designed to encourage voter registration and voter turnout.

6. In addition to our main office in Atlanta, the GCPS has field offices in Athens, Albany, Augusta, Macon, Savannah, and LaGrange, Georgia where we are able to provide outreach and support to voters and prospective voters of color and underserved communities outside of the Metro Atlanta area.

7. During the 2020 election cycle, the GCPA's voter outreach efforts were conducted in the greater Metro Atlanta region and as well as throughout other areas of Georgia from the aforementioned field offices and covered approximately 88 counties in the state.

8. GCPA's voter empowerment programs during the 2020 election cycle included, but were not limited to, educating prospective voters about how to

register to vote and to confirm their registration status; educating voters about the options to vote in-person during advanced voting, in-person on Election Day and by mail via absentee ballot; and helping voters to understand the new voting system implemented for the first-time this cycle statewide.

9. During the 2020 election cycle, the GCPA also conducted candidate forums, distributed civic education materials to voters and prospective voters; arranged for rides to the polls for voters; and also supported the Georgia Election Protection field program in order to provide assistance to voters on the ground near polling sites.

10. GCPA also participated in media interviews, sponsored Public Service Announcements (PSAs), placed billboard ads, conducted phone banking, and engaged in text message campaigns to educate voters and to encourage participation in the 2020 election cycle.

11. I cast my absentee ballot for my 2020 presidential candidates of choice in Morgan County, Georgia where I am resident. I confirmed my absentee ballot was received by the Morgan County Registrar's office on October 19, 2020. At the time I cast my ballot, I was, and still am, a qualified Morgan County voter and fully expected that my ballot would be counted equally among all of the other lawful ballots cast collectively across Georgia's 159 counties.

12. I, along with other eligible voters of color who cast lawful ballots in the 2020 presidential elections, are at grave risk of being disenfranchised by having our votes cancelled in the event the Plaintiff was to obtain the relief he is seeking in this case.

13. The GCPA has an interest in preventing the disenfranchisement of eligible voters who now run the risk of having the legitimate outcome of this election reversed by a court in an unprecedented effort by a single Plaintiff to invalidate large numbers of legitimate and lawful votes.

14. If Plaintiff is successful in his lawsuit, this outcome would severely and negatively impact the GCPA's advocacy efforts now and in the future. It would inevitably lead some voters to believe that voting is pointless because their ballots will not be counted even though they were eligible to vote and their ballots were entirely lawful. This sense of futility will likely depress turnout in the future and make it more difficult for the GCPA to carry out its mission of encouraging African-American individuals to register to vote, to vote, and to help protect others' right to vote.

15. Moreover, the disenfranchisement of voters who cast lawful ballots for their candidates of choice in the presidential election will force the GCPA to divert additional resources to voter education efforts, at the expense of other

organizational priorities. If lawful votes cast by voters in this election are discarded based upon the speculative assertions of the Plaintiff in this litigation, I fear for the long-term impact on voter participation in Georgia and on the long-term effects of such an unprecedented attack on our democratic principles nationwide.

16. I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of November, 2020 in Alpharetta, Georgia.

*Helen Butler* (signature)
Helen Butler