IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

L. Lin Wood, Jr.,

        Plaintiff,

    v.

Brad Raffensperger, et al.,,

        Defendants.

Civil Action No. 1:20-cv-04651-SDG

Date:    Nov. 19, 2020
Time:    3:00 p.m.

**PROPOSED BRIEF OF PROPOSED INTERVENORS NAACP OF
GEORGIA, ET AL. IN OPPOSITION TO PLAINTIFF'S
EMERGENCY MOTION FOR INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

Pages

I.      INTRODUCTION ..................................................................................1

II.     PLAINTIFF'S EMERGENCY MOTION SHOULD BE DENIED ........2

    A.     Plaintiff Lacks Standing .............................................................2

        1.     Plaintiff Brings a Generalized Grievance in This Case ............2

        2.     Plaintiff Does Not Have Standing to Bring a Claim
            Under the Electors and Elections Clauses .................................4

    B.     Plaintiff Is Not Likely To Succeed On The Merits Of His
       Claims .........................................................................................5

        1.     No Valid Constitutional Claim Arises Out of the Valid
            DPG Settlement .........................................................................6

        2.     Plaintiff's Monitoring Claim Fails as a Matter of Law .............9

        3.     Plaintiffs' Requested Relief Defies Well-Established
            Federal and Georgia Law ........................................................12

        4.     The Prohibition of Certification In Whole Or In Part Is
            Disproportionate To Plaintiff's Purported Injury And
            Would Violate the U.S. Constitution .......................................14

        5.     Plaintiff's Requested Declaratory Relief Is
            Disproportionate and Itself Unconstitutional ..........................17

    C.     Plaintiff's Claims With Respect to the November 2020 Election
       Are Barred by Laches ................................................................18

CONCLUSION ..................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AmBrit, Inc. v. Kraft, Inc.*,
   812 F.2d 1531 (11th Cir. 1986) ........................................................................18

*Amtrak v. Morgan*,
   536 U.S. 101 (2002)...........................................................................................19

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
   576 U.S. 787 (2015)........................................................................................4, 5

*Baber v. Dunlap*,
   349 F. Supp. 3d 68, 76 (D. Me. 2018) ..............................................................13

*Bognet v. Secretary of the Commonwealth of Pennsylvania*,
   — F.3d —, 2020 WL 6686120 (3d Cir. Nov. 13, 2020) .............................3, 4, 5

*Burton v. State of Ga.*,
   953 F.2d 1266 (11th Cir. 1992) ........................................................................13

*Bush v. Gore*,
   531 U.S. 98 (2000)............................................................................................16

*Carlson v. Ritchie*,
   830 N.W.2d 887 (Minn. 2013) .........................................................................21

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983).............................................................................................2

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)...........................................................................................2

*Coleman v. Miller*,
   307 U.S. 433 (1939)...........................................................................................5

*Corman v. Torres*,
   287 F. Supp. 3d 558, 568-569 (M.D. Pa. 2018) .................................................4

*Costello v. United States*,
    365 U.S. 265 (1961) ........................................................................................19

*Curry v. Baker*,
    802 F.2d 1302 (11th Cir. 1986) ....................................................................12

*Democratic Party of Georgia, Inc. v. Raffensperger*,
    No. 1:19-cv-05028-WMR..................................................................................8

*Donald J. Trump for President, Inc. v. Boockvar*,
    No. 2:20-CV-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020).....................11

*Duncan v. Poythress*,
    657 F.2d 691 (5th Cir. 1981) ........................................................................13

*Foster v. Love*,
    522 U.S. 67 (1997)...........................................................................................5

*Genter v. Allstate Property and Cas. Ins. Co.*,
    No. 11-cv-0709, 2011 WL 2533075 (W.D. Pa. June 24, 2011).....................15

*Gwinnett Cty. NAACP v. Gwinnett Cty. Bd. of Registration and Elections*,
    446 F. Supp. 3d 1111, 1126-27 (N.D. Ga. 2020) ..........................................20

*Hendon v. N.C. State Bd. of Elections*,
    710 F.2d 177 (4th Cir. 1983) ........................................................................21

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004)..........................................................................................2

*Lewis v. Cayetano*,
    823 P.2d 738 (Haw. 1992) ............................................................................21

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..........................................................................................2

*Maddox v. Stephens*,
    727 F.3d 1109 (11th Cir. 2013) ....................................................................12

*Malone v. Tison*,
    282 S.E.2d 84 (Ga. 1981) ..............................................................................14

*Martin v. Kemp*,
341 F. Supp. 3d 1326 (N.D. Ga. 2018)...................................................................9

*McMichael v. Napa County*,
709 F.2d 1268 (9th Cir. 1983) ............................................................................13

*Meade v. Williamson*,
745 S.E.2d 279 (Ga. 2013) ..................................................................................14

*Ne. Ohio Coalition for Homeless v. Husted*,
696 F.3d 580 (6th Cir. 2012) ..............................................................................17

*Plyman v. Glynn Cty.*,
578 S.E.2d 124 (Ga. 2003) ..................................................................................19

*Powell v. Power*,
436 F.2d 84 (2d Cir. 1970) ..................................................................................13

*Rainey v. Byrd*,
521 U.S. 811 (1997)................................................................................................5

*Rees v. PNC Bank, N.A.*,
308 F.R.D. 266 (N.D. Cal. 2015)........................................................................15

*Reid v. Morris*,
309 Ga. 230, 845 S.E.2d 590 (2020) ....................................................................7

*Republican Party of Pa. v. Cortes*,
218 F. Supp. 3d 396, 404-05 (E.D. Pa. 2016) ....................................................20

*Soules v. Kauaians for Nukolii Campaign Comm.*,
849 F.2d 1176 (11th Cir. 1988) ..........................................................................21

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)............................................................................................2

*Stein v. Cortés*,
223 F. Supp. 3d 423 (E.D. Pa. 2016)...................................................................15

*Sw. Voter Registration Educ. Project v. Shelley*,
344 F.3d 914 (9th Cir. 2003) ..............................................................................20

*Toney v. White*,
   488 F.2d 310 (5th Cir. 1973) ...................................................................20

*U.S. Term Limits, Inc. v. Thornton*,
   514 U.S. 779 (1995).................................................................................5

*United States v. Barfield*,
   396 F.3d 1144 (11th Cir. 2005) ..............................................................19

*United States v. City of Cambridge, Md.*,
   799 F.2d 137 (4th Cir. 1986) ..................................................................21

*Williamsburg Commons Condo. Ass'n v. State Farm Fire and Cas.
   Co.*,
   907 F. Supp. 2d 673 (E.D. Pa. 2012) .....................................................15

**Statutes**

3 U.S.C. §§ 5, 7 ..........................................................................................16

3 U.S.C. § 6 ................................................................................................16

O.C.G.A. § 1-3-1 (d)(6) ..............................................................................7

O.C.G.A. § 21–2–384(d) ...........................................................................18

O.C.G.A. § 21–2–406 ...............................................................................18

O.C.G.A. § 21-2-11 ...................................................................................16

O.C.G.A. §§ 21-2-381(b)(3) and 21-2-386(a)(1)(C) .................................9

O.C.G.A. § 21-2-386 (a) (1) (B) .................................................................7

O.C.G.A. § 21-2-386 (a) (1) (B)-(C) ..........................................................7

O.C.G.A. § 21-2-386 (a) (1) (C) .................................................................7

O.C.G.A. § 21-2-408(d) .............................................................................18

O.C.G.A. § 21-2-495 .................................................................................17

O.C.G.A. § 21-2-495(c)(1) ........................................................................10

O.C.G.A. § 21-2-495(d) ............................................................................10

O.C.G.A. § 21-2-499(b) ...................................................................................10, 16

**Other Authorities**

1990 Ga. Op. Atty. Gen. 60 (Ga. A.G.) ...................................................................18

The Atlanta Journal-Constitution (Mar. 7, 2020) (last visited Nov. 19, 2020) .........................................................................................................19

Notice of Intent to Post a Rule of the State Elections Board, Chapter 183-1-14 ..................................................................................................19

Notice of Public Hearing (Mar. 5, 2020), https://sos.ga.gov/admin/files/SEB%20Rule%20183.1.14.13%20R eposted%20Rules%20RE%20SEB%202.28.2020.pdf ......................................19

Op. Atty. Gen. No. 90-31, 1990 WL 487258 ..........................................................18

*Secretary of State Reports Record Breaking Turnout*, https://sos.ga.gov/index.php/elections/secretary_of_state_reports_r ecord_breaking_turnout ......................................................................................1

U.S. Constitution ..........................................................................................5, 12, 14

U.S. Constitution Article II, Section 1, Clause 2 ....................................................17

## I.    INTRODUCTION

Plaintiff's Emergency Motion for Injunctive Relief asks this Court to take the genuinely unprecedented step of throwing out the results of a general election in which nearly five million Georgians voted—a record level of election participation.[1] There is no basis whatsoever for the Court to award Plaintiff any relief in this case, much less to grant his request to prohibit certification of the results of the November 3, 2020 Georgia general election. *See* Mot. at 24. To do so would not just disenfranchise Proposed Intervenors James Woodall, Helen Butler, and Melvin Ivey, as well as the members of Proposed Intervenors the Georgia State Conference of the NAACP and the Georgia Coalition for the People's Agenda,[2] but this would disenfranchise *every Georgia voter*.

Plaintiff's Emergency Motion for Relief is late, legally and factually baseless, and contrary to the bedrock values of our democracy. Proposed Intervenors respectfully urge the Court to reject it.

---

[1] *See* Mot. at 10; *Secretary of State Reports Record Breaking Turnout*, https://sos.ga.gov/index.php/elections/secretary_of_state_reports_record_breaking_turnout.

[2] Proposed Intervenors filed their Motion To Intervene And For Leave To File Responsive Papers As Same Time As Defendants on November 18, 2020 as ECF No. 22. As of the time of the filing of this Brief in Opposition, the Motion to Intervene is pending before the Court.

## II.  PLAINTIFF'S EMERGENCY MOTION SHOULD BE DENIED

### A.  Plaintiff Lacks Standing

Plaintiff cannot obtain preliminary relief—and indeed cannot maintain suit—because his complaints about Defendants' processing of absentee ballots and conduct of the recount are, at most, the kind of generalized grievance about government conduct that the Supreme Court has repeatedly found insufficient to confer Article III standing. "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance." *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). To avoid dismissal on standing grounds, a plaintiff must show (1) an injury in fact, meaning "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the defendant's conduct, and (3) a likelihood that the injury will be redressed by a favorable decision from the court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

### 1.  Plaintiff Brings a Generalized Grievance in This Case

Plaintiff fails to allege that he will suffer an "actual or imminent" injury, as opposed to one that is merely "conjectural" or "hypothetical." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402, 409 (2013); *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983).

Plaintiff cannot demonstrate that he will suffer any injury absent the requested relief. Plaintiff's alleged injury rests solely on the unsupported assertion that alleged state law violations render (1) Georgia's election results "improper and suspect"; (2) "resulting in Georgia's electoral college votes going to Joseph R. Biden"; which is allegedly (3) "contrary to the votes of the majority of Georgia qualified electors." Mot. at 22. But Plaintiff has not provided any evidence, or even alleged, that his vote was not tabulated appropriately, that another qualified electors' votes were not tabulated appropriately, or that an unqualified elector's vote was incorrectly tabulated. Plaintiff alleges generalized injuries on behalf of the Trump Campaign, which he does not have the right to assert. Plaintiff's disappointment in the election results is not a cognizable injury, much less one that a court may remedy.

For the extraordinary relief of enjoining the certification of statewide results – the challenged votes "would have to be sufficient in number to change the outcome of the election to [Plaintiff]'s detriment." *Bognet v. Secretary of the Commonwealth of Pennsylvania*, — F.3d —, 2020 WL 6686120, at *8 (3d Cir. Nov. 13, 2020) citing *Sibley v. Alexander*, 916 F. Supp. 2d 58, 62 (D.D.C. 2013) ("[E]ven if the Court granted the requested relief, [plaintiff] would still fail to satisfy the redressability element because enjoining defendants from casting the . . . votes would not change the outcome of the election."). Plaintiff, of course, has not even attempted to make this showing, let alone proven it successfully.

### 2.   Plaintiff Does Not Have Standing to Bring a Claim Under the Electors and Elections Clauses

As a private citizen, Plaintiff has no standing to assert claims under the Electors and Elections Clauses that Georgia officials have purportedly failed to follow state election law. *See* Compl. ¶ 8 (Plaintiff is a registered elector who "brings this suit in his capacity as a private citizen"). In *Lance v. Coffman*, the Supreme Court squarely rejected the standing of four private citizens to bring an Elections Clause claim. 549 U.S. 437, 442 (2007). The Court held: "The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past.". *Id*. The same is true here. *See also Bognet v. Sec'y of Commonwealth*, No. 20-3214, 2020 WL 6686120 at *6 (3d Cir. Nov. 13, 2020) (holding that "private plaintiffs lack standing to sue for alleged injuries attributable to a state government's violations of the Elections Clause"); *Corman v. Torres*, 287 F. Supp. 3d 558, 568-569 (M.D. Pa. 2018) (three-judge panel) (holding that "two of 253 members of the Pennsylvania General Assembly" lacked standing to sue under the Elections Clause").[3]

---

[3] The only cases in which the Supreme Court has found standing to bring an Elections Clause or Electors Clause claim are those brought by or on behalf of a state, a state legislature or a working majority of a state legislature. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 799-804 (2015) (holding that plaintiff Arizona Legislature had standing because a voter initiative to

Moreover, as the Third Circuit recently held, "[b]ecause the Elections Clause and the Electors Clause have considerable similarity' ... the same logic applies to [Plaintiff's] alleged injury stemming from the claimed violation of the Electors Clause." *Bognet*, 2020 WL 6686120 at *7; *see also Foster v. Love*, 522 U.S. 67, 69 (1997) (characterizing Electors Clause as Elections Clause's "counterpart for the Executive Branch"); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 804-805 (1995) (noting that state's "duty" under Elections Clause "parallels the duty" described by Electors Clause).

Because Plaintiff lacks standing, his Emergency Motion must be denied.

## B.   Plaintiff Is Not Likely To Succeed On The Merits Of His Claims

Plaintiff's lack of standing independently justifies denial of the Emergency Motion. It also should be rejected because Plaintiff has not shown that any of the alleged conduct by Defendants rises to the level of a violation of the U.S. Constitution.

---

establish an independent redistricting commission eliminated its ability to implement a redistricting plan, thus causing a "concrete and particularized" institutional injury). In *Ariz. State Legislature*, the Court distinguished *Rainey v. Byrd*, 521 U.S. 811 (1997) (six individual members of Congress lacked standing to challenge the line-item veto), from *Coleman v. Miller*, 307 U.S. 433 (1939) (working majority of Kansas State Legislature had standing to challenge lieutenant-governor's tie-breaking vote in favor of a federal constitutional amendment).

### 1.   No Valid Constitutional Claim Arises Out of the Valid DPG Settlement

Plaintiff bases his request for emergency injunctive relief under Counts I and II on purported violations of Georgia election law that never occurred. The Settlement Agreement did not re-write any election laws on the handling of absentee ballots. Plaintiff readily concedes the Georgia Legislature has authorized the State Election Board to issue election rules and regulations that are "conducive to the fair, legal, and orderly conduct of . . . elections" and "consistent with law." Mot. at 5 (quoting O.C.G.A. § 21-2-31(2)). This is exactly what the Settlement Agreement achieved. Accordingly, the Court should reject Plaintiff's belated arguments that an agreement finalized over eight months before the election upended Georgia law.

Under the Settlement Agreement (Pl's Ex. A), Secretary Raffensperger agreed to issue an Official Election Bulletin to county officials on the procedures for reviewing signatures on absentee ballot envelopes. If a registrar or clerk were to determine a signature did not match the elector's signature on file, the Election Bulletin directed that "two other registrars, deputy registrars, or absentee ballot clerks" evaluate the signature. Pl's Ex. A ¶ 3. If a majority of the reviewers determined the signature did not match the elector's signature on file, the absentee ballot was to be rejected. *Id.*

This straightforward process is consistent with the signature verification procedures provided under Georgia law. In pertinent part, under O.C.G.A. § 21-2-386 (a) (1) (B), upon receiving an absentee ballot, "The register or clerk shall compare the signature or mark on the oath with the signature or mark" on file, and "shall if the information and signature appear to be valid . . . , so certify by signing or initialing his or her name below the voter's oath." If, however, "the signature does not appear to be valid . . . , the registrar or clerk shall write across the face of the envelope 'Rejected,' giving the reason therefor."   O.C.G.A. § 21-2-386 (a) (1) (C).

Relying on these statues, Plaintiff argues the Election Bulletin stripped authority from county election officials to determine "individually" the validity of absentee ballot signatures. Under basic rules of statutory construction and a plain reading of the statute, Plaintiff argument fails. That O.C.G.A. § 21-2-386 (a) (1) (B)-(C) refers to "clerk and "register" in the singular does not mean only one "clerk" or one "register" may be involved in evaluating the validity of a signature on an absentee ballot envelope. In interpreting a statute, "the singular or plural number each includes the other, unless the other is expressly excluded." O.C.G.A. § 1-3-1 (d)(6); *see Reid v. Morris*, 309 Ga. 230, 236 n.3, 845 S.E.2d 590, 596 (2020) (applying O.C.G.A. § 1-3-1 (d)(6) to determine statutory use of the term "defendant" does not mean only one defendant may be liable for punitive damages). In drafting O.C.G.A. § 21-2-386 (a) (1) (B)-(C), the Legislature did not preclude registers,

deputy registers, and clerks from working together to evaluate questionable signatures. Nothing in the Settlement Agreement is contrary to Georgia law, and Defendants guidance on the handling of absentee ballots did what Plaintiff agrees is proper under Georgia law: provided a set of rules "conducive to the fair, legal, and orderly conduct of . . . elections" and "consistent with law." Pl's Mot. 5.

Plaintiff also asserts that Defendants violated Georgia law by allowing a single political party to "write rules for reviewing signatures." Pl's Mot. 9, 18. Plaintiff's own exhibits refute this hyperbole. As part of the Settlement Agreement, the State Defendants agreed to "consider" providing county registers and absentee ballot clerks with training materials on evaluating voter signatures prepared by a handwriting expert retained by the plaintiffs in *Democratic Party of Georgia, Inc. v. Raffensperger*, No. 1:19-cv-05028-WMR. *See* Pl's Ex. A, ¶ 4. The Settlement Agreement did not identify the materials nor did it impose any requirement on distributing those materials. Further, Plaintiff does not allege what, if any, materials were distributed nor does he explain how they would have constituted "rules for reviewing signatures." Thus, Plaintiff has not established the Settlement Agreement violated Georgia election law.

Finally, the declaration filed this morning by Plaintiff's counsel, *see* Dkt. 30-1, fails to move the needle. First, properly analyzing the Georgia Absentee Voter File and reaching conclusions based on it requires social science expertise beyond

that attested to by Plaintiff's counsel. Second, and relatedly, the declaration fails to acknowledge that a comparison of 2016 and 2018 absentee ballot rejection data related to signature mismatch is inapposite because of the notice-and-cure process was not in effect in Georgia at all until an order issued shortly before the November 2018 general election in *Martin v. Kemp*, 341 F. Supp. 3d 1326 (N.D. Ga. 2018), and was formally adopted by the Georgia Legislature via the enactment of H.B. 316 in 2019, which amended O.C.G.A. §§ 21-2-381(b)(3) and 21-2-386(a)(1)(C) to provide for notice and cure. Expanded numbers of voters utilizing the notice-and-cure process explains why the number of signature mismatch-related rejections might decrease, if that is in fact the case.

### 2.    Plaintiff's Monitoring Claim Fails as a Matter of Law

In addition, Plaintiff cannot succeed on his due process claim. This claim is based on Plaintiff's assertion that Republican monitors "have been denied the opportunity to be present throughout the entire Hand Recount," and when present were unable to observe the recount "in any meaningful way." Mot. at 21. Plaintiff does not claim that *he* made any effort to monitor the recount, much less than he was denied the opportunity to do so. Rather, the only proffered bases for this claim are the assertions that one Trump Campaign monitor arrived at a counting location around the time indicated by the Republican Party only to find that the recount there had been finished (Coleman Decl. ¶¶ 3-5, ECF 6-2), and that another monitor *did*

observe the recount that same day at that same location and *was* able to object to certain ostensible irregularities before being asked to leave *because of the large number of other Republican monitors* (Dietrich Decl. ¶¶ 6-13, ECF 6-3).

a.     **Plaintiff sat on his rights as afforded by Georgia law**

Plaintiff should have availed himself and two other electors of the legislatively approved remedies afforded to him under Georgia law if he thought there was a mistake or error not apparent on the face of the returns. Plaintiff waived the relief requested in this case by failing to do so. In particular, Plaintiff ignores that O.C.G.A. § 21-2-495(d) allows a losing candidate for a federal office or three electors to request a recount or recanvass of votes any time prior to the certification of the results when it appears that a discrepancy or error, although not apparent on the face of the returns, has been made. Moreover, under O.C.G.A. § 21-2-495(c)(1), a losing federal candidate has the right to request that the Secretary of State order a mandatory statewide recount when the margin between the candidates is not greater than 0.5 percentage points within two business days of the certification of the election results. The Governor's certification of the presidential electors' results is on November 21, 2020. Finally, any alleged defects in the failure to provide adequate public access to the recount alleged by the plaintiff in his complaint and motion can be readily remedied by the Trump Campaign asking for a recount within two business days of the certification of the results by the Governor. *See* O.C.G.A. § 21-

2-499(b).

        b.    **Plaintiff does not allege a due process claim**

Even if Plaintiff could assert the rights of third-parties—as, of course, he cannot—those facts do not remotely add up to a constitutional violation. Put simply, neither Plaintiff nor anyone else has a *constitutional right* to be an election monitor. *See, e.g., Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680, at \*67 (W.D. Pa. Oct. 10, 2020) ("At the outset, 'there is no individual constitutional right to serve as a poll watcher[.]'") (quoting *Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020)).[4]

Plaintiff does not address the requirements for a due process claim, and instead relies on the notion that Defendants' alleged failure to conduct the Hand Recount "a manner consistent with the Georgia Election Code" constitutes a free-floating due process violation. Mot. at 20-21; *cf.* Compl. ¶¶ 97-106 (Due Process claim alleging that the Trump Campaign was denied the ability to monitor the Hand Recount). But Plaintiff cannot ignore Supreme Court and Eleventh Circuit law.

Plaintiff fails to acknowledge, much less attempt to satisfy, the requirements of a substantive due process claim. "[P]laintiffs face a high bar when attempting to

---

[4] Although Plaintiff also indicates that other non-parties harbor suspicious about irregularities in the recount, this is *not* the monitoring-related Due Process violation alleged in the Complaint (*see* Compl. ¶¶ 97-106) and Plaintiff does not attempt to make a constitutional claim based on them.

establish a substantive due process violation." *Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013). A "garden variety election dispute[]" such as an "ordinary dispute over the counting and marking of ballots" falls far short of a substantive due process violation. *Curry v. Baker*, 802 F.2d 1302, 1315 (11th Cir. 1986) (internal quotation omitted).

In any case, nothing in Plaintiff's Emergency Motion shows, or even suggests, that Plaintiff, Ms. Coleman, or Ms. Dietrich were denied the opportunity to act as monitors. Plaintiff apparently never tried, Ms. Coleman arrived too late, and Ms. Dietrich was in fact able to observe the recount. And the experience of two individuals at a single place on a single day says nothing at all about the broader conduct of the election, the results of which Plaintiff asks this Court to nullify.

### 3.      Plaintiffs' Requested Relief Defies Well-Established Federal and Georgia Law

Here, Plaintiff's requested relief is disproportionate to his purported injury and would violate the U.S. Constitution. Plaintiff fails to allege fraud or electoral irregularities in his Motion for a Temporary Restraining Order, and as such, it is difficult to even consider the Plaintiff's proposed remedies. However, even if all of Plaintiff's allegations survived, none of the remedies sought by the Plaintiff in the Motion could be granted under federal or Georgia law. No court has ever granted relief of the nature and scope requested by the Plaintiff under any set of facts, let

alone those averred in the Motion. This is a classic case in which "the cure [is] worse than the alleged disease, at least insofar as the professed concern is with the right of voters to cast effective ballots in a fair election." *Baber v. Dunlap,* 349 F. Supp. 3d 68, 76 (D. Me. 2018).

Even if Plaintiff's allegations could support a finding of some sort of errors in election administration, tossing out millions of votes in the presidential election is at odds with established of law. Courts have refused to "believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error." *Powell v. Power,* 436 F.2d 84, 88 (2d Cir. 1970). A finding that "the election process itself reaches the point of patent and fundamental unfairness … must go well beyond the ordinary dispute over the counting and marking of ballots." *Duncan v. Poythress,* 657 F.2d 691, 703 (5th Cir. 1981) (quoting *Griffin v. Burns,* 570 F.2d 1065, 1077 (1st Cir. 1978)). The Eleventh Circuit has observed that "[i]n most cases, irregularities in state elections are properly addressed at the state level, whether through state courts or review by state election officials." *Burton v. State of Ga.,* 953 F.2d 1266, 1268 (11th Cir. 1992). Only the most egregious election misconduct could conceivably justify the sort of mass disenfranchisement Plaintiff seeks. *See McMichael v. Napa County,* 709 F.2d 1268, 1273–94 (9th Cir. 1983) (Kennedy, J., concurring) (invalidation of election results "has been reserved for instances of willful or severe violations of

established constitutional norms"). Even if proven likely true—which they have not been—none of Plaintiffs' allegations meet that standard.

The Georgia Supreme Court has similarly stated that "[i]t is not sufficient to show irregularities which simply erode confidence in the outcome of the election. ***Elections cannot be overturned on the basis of mere speculation***." *Meade v. Williamson,* 745 S.E.2d 279, 285 (Ga. 2013) (emphasis added) (quoting *Middleton v. Smith,* 539 S.E.2d 163 (Ga. 2000)). In this vein, that Court has held in a case where Atlanta voters registered to vote at locations that were not authorized by state law and voted in the 1981 Atlanta mayoral election, "the remedy of disenfranchisement of voters registered in violation of the statute is so severe as to be unpalatable where the good faith of the registrars is not disputed." *Malone v. Tison,* 282 S.E.2d 84, 89 (Ga. 1981).

As a matter of law, the Motion—which does not demonstrate any concrete or specific instances of fraud, systemic or otherwise—cannot support the extreme relief requested. And far from curing any constitutional violation, the Plaintiff's requested injunction would *create* grave constitutional violations by invalidating the legal and valid votes of millions of Georgia citizens, or by creating new election procedures.

### 4. The Prohibition of Certification In Whole Or In Part Is Disproportionate To Plaintiff's Purported Injury And Would Violate the U.S. Constitution

Plaintiff's request that the Court prohibit certification of the election results is

a disproportionate and unconstitutional response to the claims in the Motion.

Plaintiff asks the Court to enjoin certification of the 2020 election results on a statewide basis in Georgia, or, in the alternative, to enjoin certification of results that include the tabulation of defective absentee ballots. Mot. at 24. A statewide injunction is improper. It is only in the rarest of circumstances that federal courts have taken such drastic measures to prevent the certification of election results, and only where the evidence establishes that there was a fundamental failure of the election process. *See Stein v. Cortés*, 223 F. Supp. 3d 423 (E.D. Pa. 2016) (collecting cases). The Motion does not show that Plaintiff is likely to succeed on his claims of systemic or election worker error. Because Plaintiff's attempt to circumvent the will of the Georgia electorate "has no essential or important relationship to the claim for relief," his requested relief must be denied. *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)); *Genter v. Allstate Property and Cas. Ins. Co.*, No. 11-cv-0709, 2011 WL 2533075, at *5 (W.D. Pa. June 24, 2011).[5]

Moreover, a judicial order nullifying Georgia's election results would be grossly inequitable because the Presidential election results must be determined by

---

[5] *See also Williamsburg Commons Condo. Ass'n v. State Farm Fire and Cas. Co*., 907 F. Supp. 2d 673, 680 (E.D. Pa. 2012) (granting motion to dismiss requested relief).

December 8, 2020, to benefit from the safe-harbor provision of the federal election code and in any event by December 14, 2020, to ensure that Georgia's electoral votes will be counted. 3 U.S.C. §§ 5, 7; O.C.G.A. § 21-2-11 (electors must meet at noon the day directed by Congress); *see Bush v. Gore*, 531 U.S. 98, 110–111 (2000). To meet this task, Georgia law requires the Secretary of State to compute the returns of the election received by the various election superintendents and to provide such results to the Governor by 5:00 PM on November 20—***two days from now***. O.C.G.A. § 21-2-499(b). After that, consistent with federal law, the Governor must the slate of electors by issuing a certificate identifying such electors by 5:00 PM on November 21. *Id.*; 3 U.S.C. § 6. This certification process constitutes an outside limit on the ability of this Court to issue relief. *Bush*, 531 U.S. at 110-111. To prevent state officials from meeting that deadline could throw the results of this election into chaos, and could gravely undermine public confidence in the conduct of the presidential election and in the rightful winner.

The requested relief would also violate the constitutional rights of Georgia voters. Even if Plaintiff's allegations were proven (they are not) and there were isolated and sporadic incidents in which the election laws were violated, not by voters but by election workers or other officials, this occurrence could not possibly justify wide-scale disenfranchisement of Georgians. Such a remedy—unlike the election irregularities Plaintiff alleges—would place an undue burden on the right to

vote. *See Ne. Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 595, 597-98 (6th Cir. 2012) (holding rejecting ballots invalidly cast due to poll worker error likely violates due process). Plaintiff's unconstitutional prayer for relief must be rejected.

**5.    Plaintiff's Requested Declaratory Relief Is Disproportionate and Itself Unconstitutional.**

Plaintiff's request for declaratory relief requiring a third counting of nearly five million ballots and one-sided Republican only monitoring in both that process and in the high-stakes January 5, 2021 run-off election is disproportionate (see Mot. at 24), implausible, and wholly unsupported by either Georgia law or federal law.

The Plaintiff offers no legal or factual support to justify any of the forgoing requests for declaratory relief. Georgia law already provides the mechanisms for a recount of votes cast in a presidential election. O.C.G.A. § 21-2-495. The Plaintiff asks that the Court declare an additional "recount" of the already conducted recount. Georgia law does not provide for any additional subsequent recounts following the initial requested recount of general election results—and Plaintiff's Equal Protection and Due Process claims are premised on the notion that going beyond the express provision of the statute would violate the Georgia General Assembly's constitutional right to control the manner of the election under Article II, Section 1, Clause 2 of the U.S. Constitution. Plaintiff cannot have it both ways.

Moreover, Plaintiff is essentially demanding that the Court grant the

Republican Party an opportunity to conduct a wholly partisan, single-party recount that has absolutely no basis in the law, is unprecedented, and would wrongfully undermine public confidence in the legitimacy of the election results. This too is contrary to Georgia law. For example, the Plaintiff requests that the Court allow the Republican Party to have monitors observe signature match analysis in the January 5, 2021 runoff election in Georgia. Georgia law does not permit this. Georgia law provides that poll watchers are permitted "for the purpose of observing the conduct of the election and the counting and recording of votes." O.C.G.A. § 21-2-408(d). However, a 1990 opinion by the Attorney General of Georgia, in connection with O.C.G.A. § 21–2–406 and O.C.G.A. § 21–2–384(d) stated that Georgia law stated that no inspection of returned absentee ballots is allowed under Georgia law. 1990 Ga. Op. Atty. Gen. 60 (Ga. A.G.), Ga. Op. Atty. Gen. No. 90-31, 1990 WL 487258. Even if Plaintiff's claims were supported, this requested remedy is incongruous to anything allowed or provided for by Georgia or federal law.

### C.   Plaintiff's Claims With Respect to the November 2020 Election Are Barred by Laches

The doctrine of laches applies forcefully in the elections context to avoid gamesmanship and precisely the kind of mass-disenfranchisement that Plaintiff seeks. Plaintiff has plainly (1) "delay[ed] in asserting a right or a claim," (2) without excuse, (3) that delay would result in undue prejudice. *AmBrit, Inc. v. Kraft, Inc.*,

812 F.2d 1531, 1545 (11th Cir. 1986) (setting out the laches factors); *see also Amtrak v. Morgan*, 536 U.S. 101, 121-22 (2002) (laches "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant"); *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005); *Costello v. United States*, 365 U.S. 265, 282 (1961); *Plyman v. Glynn Cty.*, 578 S.E.2d 124, 126 (Ga. 2003) (Georgia law).

The settlement agreement to which Plaintiff objects was entered into and made public in March 2020, eight full months before the November 3, 2020 general election. *See* Mot. at 6 n.2 (citing March 6, 2020 public filing of the settlement agreement). It was the subject of extensive publicity,[6] and the relevant regulations contemplated by the settlement agreement were adopted after a public notice and comment period.[7] And yet Plaintiff did nothing. Instead of bringing a timely challenge, Plaintiff waited until after the procedures he objects to had been used to

---

[6] *See, e.g.*, Mark Niesse, Lawsuit settled, giving Georgia voters time to fix rejected ballots, The Atlanta Journal-Constitution (Mar. 7, 2020), https://www.ajc.com/news/state--regional-govt--politics/lawsuit-settled-giving-georgia-voters-time-fix-rejected-ballots/oJcZ4eCXf8J197AEdGfsSM/ (last visited Nov. 19, 2020).

[7] Georgia State Elections Board, Notice of Intent to Post a Rule of the State Elections Board, Chapter 183-1-14 and Notice of Public Hearing (Mar. 5, 2020), https://sos.ga.gov/admin/files/SEB%20Rule%20183.1.14.13%20Reposted%20Rules%20RE%20SEB%202.28.2020.pdf (scheduling public hearing for April 15, 2020).

process the ballots of more than a million Georgians, and the outcome of the election—which he disliked—was made known.

It is a bedrock rule of election law that challenges to election procedures to be raised *before* the election is conducted. *See Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973) ("[T]he law imposes the duty on parties having grievances based on discriminatory practices to bring the grievances forward for pre-election adjudication."). This common-sense rule protects voters and the integrity of our system of government: pre-election challenges allow problems to be fixed *before* the election is held, without disrupting votes *after* they have been cast. *See, e.g.*, *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) ("Interference with impending elections is extraordinary, and interference with an election after voting has begun is unprecedented.").

Since overturning the results of an election is an extraordinary intervention by the judiciary into democratic processes, a challenge to election procedures should be brought *when there is still time to correct those procedures*. *See Gwinnett Cty. NAACP v. Gwinnett Cty. Bd. of Registration and Elections*, 446 F. Supp. 3d 1111, 1126-27 (N.D. Ga. 2020) ("Plaintiffs were not faced with a binary choice and should have sought court intervention sooner."); *see also Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 404-05 (E.D. Pa. 2016) (declining to enjoin aspects of Pennsylvania's poll-watcher statute in case filed "eighteen days before the election,"

observing that "Plaintiffs unreasonably delayed filing their Complaint and Motion, something which weighs decidedly against granting the extraordinary relief they seek").

Were the law otherwise, parties could "lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action." *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)); *see also, e.g.*, *Carlson v. Ritchie*, 830 N.W.2d 887, 892 (Minn. 2013) ("[P]etitioners cannot wait until after elections are over to raise challenges that could have been addressed before the election."); *Lewis v. Cayetano*, 823 P.2d 738, 741 (Haw. 1992) (laches barred post-election challenge to form of ballot, where voters had at least constructive notice of the form for a month prior to the election). "Courts have been wary lest the granting of post-election relief encourage sandbagging on the part of wily plaintiffs." *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (11th Cir. 1988); *see also, e.g., United States v. City of Cambridge, Md.*, 799 F.2d 137, 141 (4th Cir. 1986) ("[A] candidate or other election participants should not be allowed to ambush an adversary or subvert the election process by intentionally delaying a request for remedial action to see first whether they will be successful at the polls."). That is precisely what Plaintiff has done here. Plaintiffs'

displeasure with the election *results* is no excuse for his delay in bringing his objection to the *procedures* by which that election was conducted.

By waiting until after the end of vote counting, Plaintiff now tries to cast a cloud over ballots cast in good faith by millions of Georgia voters, including those of Proposed Intervenors President Woodall, Ms. Butler, and Rev. Ivey, who took all necessary steps to ensure that their voices count in this election. Even assuming *arguendo* that there were problems with the conduct of the election and that any such conduct gave rise to constitutional concerns, if Plaintiff had timely asserted these claims, Defendants would have had the opportunity to address the concern. But having sat on his objections for eight months, laches now bars Plaintiff's claims.

## **CONCLUSION**

For all of these reasons, Proposed Interveners respectfully urge the Court to deny Plaintiff's Emergency Motion for Injunctive Relief.

Dated:      November 19, 2020

Respectfully submitted,

By: */s/ Bryan L. Sells*

Susan Baker Manning^
Jeremy P. Blumenfeld^
Catherine North Hounfodji^
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: +1.202.739.3000
Facsimile: +1.202.739.3001
susan.manning@morganlewis.com
jeremy.blumenfeld@morganlewis.com
catherine.hounfodji@morganlewis.com
william.childress@moreganlewis.com
chris.miller@morganlewis.com
benjamin.hand@morganlewis.com

Bryan L. Sells (Bar No. 635562)
**Law Office of Bryan L. Sells, LLC**
P.O. Box 5493
Atlanta, GA 31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com

*/s/ John Powers*

Kristen Clarke^
kclarke@lawyerscommittee.org
Jon M. Greenbaum*
jgreenbaum@lawyerscommittee.org
Ezra D. Rosenberg*
erosenberg@lawyerscommittee.org
Julie M. Houk*
jhouk@lawyerscommittee.org
John Powers*
jpowers@lawyerscommittee.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300

* admitted *pro hac vice*

^ *Pro hac vice* motion forthcoming

Attorneys for Proposed Defendant-
Intervenors Georgia State
Conference of the NAACP, et al.

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: November 19, 2020.

/s/     *John Powers*
John Powers